W. R. BAKER v. W. T. WASSON.

(Case No. 1333.)

1. ACTION — STOCKHOLDER. — A stockholder whose stock has been canceled on the books of the company and new stock issued to one not entitled, and this through the wrongful act of one not authorized, is not restricted in seeking relief to following his investment in its new form, but he may abandon his claim to the stock,

and pursue his remedy for its value against any one who has illegally converted it, or who has so clouded its title as to make its recovery difficult.

2. INNOCENT PURCHASER.— Under such circumstances the right of an innocent purchaser of the new stock, as against the company which thus issued it without authority from the real owner, is complete to the stock issued.

3. VERDICT.— See opinion for facts under which a verdict against one, based on a charge of fraudulent acquisition of stock, was not disturbed.

APPEAL from Harris. Tried below before the Hon. James Masterson.

A report of this case up to the former appeal will be found in 53 Tex., 151. The suit was against Baker, Shirley, and the H. & T. C. R'y Co. The transcript filed on the present appeal begins with the first amended petition of the plaintiff W. T. Wasson. It is quite too lengthy for insertion, but will be understood in view of the former report of the case, in connection with the following: Plaintiff charged:

"That on the 19th day of December, A. D. 1857, W. B. Wasson subscribed and paid for ten shares of the capital stock of the Houston & Texas Central Railway Company, and the company issued to him therefor a certificate numbered 389, certifying that W. B. Wasson was the proprietor of ten shares of the capital stock of the company, which certificate incorporated in its face the agreement and stipulation that the stock should remain on the books in his name, and no renewal thereof should be issued, or any transfer or assignment recognized until the certificate held by him should be surrendered to the directors of the company, accompanied by a transfer, when a new certificate of proprietorship should be delivered to the assignee.

"Plaintiff alleged that on the 1st day of June, 1870, W. B. Wasson, being then in possession of the ten shares of stock and the certificate therefor, did transfer the same to the plaintiff for a valuable consideration then paid, and he is still the rightful owner thereof, never having parted with his right therein.

. . . "That on the 10th day of March, 1871, W. R. Baker was not only secretary of said old company and custodian of its books, but was also acting as president of the new organization, either being the actual president elect or performing the functions thereof as vice-president, the president being a non-resident and nominal official.

"That on that day, being charged with the duty of protecting the interest of the stockholders of both companies, as intrusted to him, he did, without any right or warrant from any board of directors or other trustees, managers or functionaries of the old or the

new company, enter in his own handwriting in the stock book of said old company, a credit to himself and a debit to W. B. Wasson of the ten shares standing on the books in said Wasson's name, and did issue to himself and have recognized as his the ten shares of stock of W. B. Wasson, and canceled the credit of said ten shares to W. B. Wasson on said books, all of which alteration and mutilation of books and cancellation of Wasson's shares, and issuing to himself of a certificate and title therefor, was tortious and wrongful, and destructive of the rights of plaintiff, who at that time was the owner of said W. B. Wasson's stock, of which fact Baker had notice.

" That Baker, as president of the new company, without any authority from the same, but using his power as president and managing officer, then had himself recognized in the company as owner of the W. B. Wasson stock, voted the same and claimed the same as his own, exercising ownership over it, and had himself so accredited with the new company, fraudulently using his position in the company to effect this end, and combining with the company in so doing, with the view of appropriating the stock and its value to himself, which he did succeed in doing, and in his official capacity as secretary of the old company, did, on the —— day of ——, 1871, report himself as the proprietor of said shares of stock in a certified list furnished the new company, in pursuance of a resolution making inquiry into the true condition of the stock. . . . .

" That the said company and said Baker did thereafter, to wit, on the —— day of ——, A. D. 1873, after full notice of all the facts, fraudulently and illegally combine and issue the said ten shares of stock to Moses Taylor, of New York, after this plaintiff had sued said Baker to settle his title, in order that his title and transfer might, be recognized by the company, and said transfer of said stock by said Baker and the company pending said suit was in violation of the duty of said company to this plaintiff after full notice of all the facts, and in violation of their contract that the original certificate, then and now held by plaintiff, should be surrendered before issuing a new certificate of proprietorship.

"·Plaintiff alleged that Baker and Shirley combined to destroy the stock by procuring a pretended transfer from W. B. Wasson, of date March 9, 1871, in which transaction Shirley acted for and with Baker and with full knowledge of the fact that plaintiff claimed the stock. . . .

" That the actual damage grows out of the personal act of Baker, without any request from anybody, without authority or instruction

from any corporation, and against his sworn official duty as secre-
tary of the solvent company, in canceling the W. B. Wasson stock
on the books of the old company, crediting himself therewith, and
issuing to himself a certificate stating and asserting that he was the
proprietor of the ten shares, without requiring a surrender of the
original certificate, as required both by the certificate and the by-
laws of the company as a prerequisite to the register and recognition
of a transfer or the issue of a new certificate."   .   .   .

Shirley testified that Baker did not advance him the money to buy
the Wasson stock as agent of Moses Taylor. He purchased the
stock from W. B. Wasson, and obtained the money to buy it from
Wm. R. Baker, who was engaged in buying up stock to get control
of the company. Shirley borrowed the money from Baker, and after
his purchase transferred the stock to him with an agreement that
it should thus stand until he repaid the money from sale of the stock.
Afterwards Shirley took a letter from Baker to Moses Taylor stating
that he, Shirley, held in Baker's name a certain number of shares
of stock in the H. & T. C. R'y Co., which he would transfer or de-
liver on Shirley's order, or deliver to his assignee. It was then that
Shirley sold to Moses Taylor, and repaid Baker his advances from
proceeds of sale, according to Shirley's testimony.

Verdict against the railway company and Baker for $4,000, with
eight per cent. interest from March 10, 1871. Judgment accordingly.

Baker alone appealed.

*E. P. Hill*, for appellant, cited Cushman *v.* Thayer Manuf'g Co.,
76 N. Y., 365; Telegraph Co. *v.* Davenport, 7 Otto, 369; 2 Hilliard
on Torts, p. 446; Addison on Torts, p. 365; Dicey on Parties, p. 449;
Cooley on Torts, p. 126, note 4, pp. 659, 660; Scoby *v.* Sweatt, 28
Tex., 729; Usher *v.* Skidmore, 28 Tex., 621; Kinney *v.* Lee, 10 Tex.,
157; Killebrew *v.* Stockdale, 51 Tex., 529; Lee *v.* Boutwell, 44
Tex., 153.

No briefs on file for appellee.

STAYTON, ASSOCIATE JUSTICE.— This cause was before this court at
a former term, and a general statement of it will be found in
53 Tex., 151.

On the last trial W. T. Wasson recovered a judgment against W.
R. Baker and The Houston & Texas R. R. Co., for the value of the
stock, and interest thereon at the rate of eight per cent. per annum
from the time Baker asserted ownership on the books of the
company.

The defendant Baker alone prosecutes this appeal, and, among other things, claims: 1st. That the petition states no cause of action against him. 2d. That the evidence does not warrant a judgment against him. Under the finding of the jury, there being evidence to support it, it must be held that at the time Shirley claimed to have bought the stock from W. B. Wasson, he had no interest in it, and that it belonged to W. T. Wasson.

The averments of the petition show a good cause of action, and the fact that as against Baker, or even as against Moses Taylor, who, however, does not appear to have had any notice of W. T. Wasson's claim at the time he bought the stock from Shirley upon the faith of Baker's letter, Wasson may have had the better right to the stock, does not preclude him from abandoning his claim to the stock itself, and asserting his right to compensation therefor, against any persons who may have illegally converted the stock, or so beclouded the title to it as to make its recovery difficult, if not impracticable.

At the time Moses Taylor bought the stock it stood upon the books of the company in the name of Baker, and he held the proper certificate to evidence his legal title to ten shares of stock, and as against the company, Taylor's right, in the absence of notice to him of Wasson's right, and of Baker's want of authority to issue the certificate of stock to himself, was complete to the stock.

If he had notice of Wasson's claim at the time he bought the stock, even though it then stood in the name of Baker, his purchase of Baker's claim might have been disregarded by the company and a new certificate of stock issued to Wasson if he showed the better right.

It does not appear, however, that Taylor had any notice of the claim of Wasson, or of irregularities which preceded the issuance of stock to Baker, and this by the company, Baker and Shirley, was given as a reason why a new certificate for stock should issue directly to Taylor.

That certificate of stock was directed to issue at a stockholders' meeting held on the 13th of May, 1873, which was after the institution of this suit; and in that meeting both Baker and Shirley participated.

That resolution evidenced the consent of the company, Baker and Shirley, that the complete legal title to ten shares of the stock of the company should be placed in Moses Taylor, notwithstanding the admitted irregularities of the transfer, and this upon no other right than such as was derived from W. B. Wasson through the alleged

purchase by Shirley, and after full notice of the claim of W. T. Wasson.

The acts pleaded, which there was some evidence to sustain, amounted practically to a conversion of the stock by Baker and Shirley, and was sufficient to maintain an action for the value of the stock; and Baker could not be heard to say that if Wasson's averments were true, then title to the stock was yet in Wasson, and he was therefore not injured.

It was the duty of the company to keep unimpaired the title of the true owner to the stock originally issued to W. B. Wasson, by refusing to issue a new certificate of stock to any person not the owner of it, and a breach of that duty imposed liability to the true owner; and as was said upon the former appeal, if any person wrongfully combined with the company and procured the issuance of new certificate of stock to himself, so as to defeat the rights of the true owner of the stock, then such person would also become liable to the true owner. Baker v. Wasson, 53 Tex., 156; Bayard v. Farmers' & Mechanics' Bank, 52 Pa. St., 234; Pratt v. Taunton Manufacturing Copper Co., 123 Mass., 112; Salisbury Mills v. Townsend, 109 Mass., 121.

It is also true that if Baker, as secretary of the company, without authority of the company, did, without the consent of the true owner of the stock, cancel the stock as it stood on the books of the company in the name of Wasson, and issue to himself a certificate therefor, through which the stock has passed into the hands of an innocent purchaser, then he is liable to the true owner for the damage which he has sustained by his act, and the company would also be liable for the want of due care, by which the act of its agent could have been prevented. Small v. Boston Water Power Co., 4 Allen, 277; Bridgeport Bank v. N. Y. & N. H. R. R. Co., 30 Conn., 232; Bank v. Lanier, 11 Wall., 373; Morawetz on Corporations, 331.

An equitable action to compel the company to issue a new certificate of stock to W. T. Wasson could be maintained where an adequate remedy at law for damages would not exist (Cushman v. Thayer Manufacturing Co., 76 N. Y., 368); but the injured person has his election of remedies, and it is not for a wrong-doer to prescribe to him what his remedy shall be. After a conversion the value of stock might be so much diminished that new certificates would give no adequate compensation; or to require a new issue of the stock might, in cases like this, where shares have gone into the hands of innocent

purchasers, involve an overissue of stock, which would be illegal, or otherwise an innocent purchaser suffer.

It then becomes necessary to inquire whether or not there was evidence that Baker had notice that Shirley was not the real owner of the stock at the time he canceled the stock of Wasson and placed it in his own name; for if so, then the judgment must be affirmed, for in such case he would not be a *bona fide* holder.

The cause was tried by a jury, and the question as to whether Baker was a *bona fide* holder of the stock was fairly submitted by the court; and if there is evidence to support the verdict, although we might be of the opinion that the finding should have been different, it, under well established rules, must stand.

The fact that Shirley did not obtain and deliver to Baker the original certificate for stock prior to the time Baker changed the ownership of the stock upon the books and issued a new certificate to himself, was a matter which should have excited inquiry, for it was contrary to the usual course of business and to the by-laws of the company. The charter authorized the company to make by-laws regulating the transfer of stock.

The by-laws provide, in giving a form of certificate for stock, that the certificate shall contain the following clause: "This certificate is transferable by assignment in writing, signed by the owner, and upon surrender of the certificate, with such assignment, the assignee will be entitled to a new certificate of stock in his own name;" and also provide that "the transfer of any share may be made by an instrument in writing, signed by the owner, which writing may be indorsed on the certificate or made on a separate paper. The assignee must cause his transfer to be presented and delivered to the secretary of the company before it will entitle him to be recognized as the owner; and upon presentation of such transfer, with the certificate of stock, the secretary shall record the same in books to be kept for that purpose, and called 'Register of Transfers,' and the president and secretary shall issue new certificate or certificates to, the assignee as he may be entitled, unless they have notice of fraud or invalidity of such transfer."

The fact that neither Baker nor Shirley ever held or presented the certificate of stock issued to W. B. Wasson was sufficient, it being in existence, and no inquiry having been made which led to the belief of its loss, to put a prudent man upon inquiry as to its ownership; that inquiry would have developed the fact that W. T. Wasson was the owner. Strange *v.* H. & T. C. R. R. Co., 53 Tex.,.

162. The issuance of a new certificate for the stock to Baker was in direct violation of the by-laws of the company, of which it cannot be presumed that he was ignorant, considering his relationship to the company.

Subsequent action of Shirley, Baker and the company show that they were all aware of the grave irregularities which attached to the issue of a new certificate for the stock to Baker, for, upon the application of Taylor for a new certificate, his want of notice of such irregularities was made the ground upon which his right was recognized; and the irregularities were deemed of so grave a character as to require a resolution by a meeting of the stockholders to authorize the issue of new certificates to him for this and other stock.

The resolution directing the issue of certificate to Taylor, passed May 13, 1873, which was after the institution of this suit, was as follows:

"HOUSTON, TUESDAY, May 13, 1873.

"Stockholders' adjourned meeting.

"Mr. Shirley offered the following resolution:

"'WHEREAS, The following described shares of stock, viz.:

| | |
|---|---|
| 10 shares originally subscribed by | W. B. Wasson. |
| 5 shares originally subscribed by | B. A. Philpot. |
| 10 shares originally subscribed by | R. W. Crom. |
| 4 shares originally subscribed by | Thos. A. Wells. |

making a total of twenty-nine shares of stock, have been assigned and transferred by parties to Moses Taylor of the city and state of New York for a valuable consideration, and without previous notice to him of any irregularities in the transfer of said stock; it is

"'Resolved, That the president and secretary of the company be and are hereby authorized to issue to the said Moses Taylor, regular unconditional certificates therefor upon the filing of the transfers held by him; provided, that nothing herein shall be construed as binding this company to a recognition for a like cause of any future transfer of any stock of the company.'

"Mr. Bremond moved to strike out the proviso, which upon call of stock was accordingly done. Yeas: Baker, Bremond, Rice, Shirley, Van Alstyne; total, 3,909. Nays: Dodge, Groesbeck, Hutchins, Page & Taylor; total, 2635. The resolution as amended was then unanimously adopted."

In pursuance of that resolution certificate issued to Moses Taylor.

The money to pay for the Wasson stock was deposited with White

on the 11th of March, 1871; on the same day W. B. Wasson de-
clined to receive it, and informed White that the stock belonged to
W. T. Wasson; of this White informed Shirley.

The transfer of the stock from Shirley to Baker, made upon the
back of the transfer from W. B. Wasson, bears date 11th of March,
1871, and Shirley testified that he mailed the transfer from Wasson
to himself to Baker on the 10th or 11th of March, or a day or two
after, with the transfer from him to Baker.

· The transfer made upon the books of the company by Shirley, in
Wasson's name, to Baker, bears date March 20, 1871, and on a former
trial Baker testified that he learned from Shirley, when he saw him
in Houston, that Wasson had refused to receive the money placed in
White's hands.   These were proper matters to be considered by the
jury as bearing upon the question as to whether or not Baker had
notice of the claim of W. T. Wasson prior to the time that Taylor,
influenced by his letter given to Shirley, had acquired an interest in
the stock.   From the testimony of Baker, that letter was not given
to Shirley earlier than June, 1871.

It appears from the evidence of White, that in December, 1873,
he holding a judgment or judgments against the Houston & Texas
Central Railway Company to the amount of $1,500, had the same
satisfied with the money placed in his hands by Shirley to pay for
the Wasson stock, and that he received a receipt therefor, a receipt
from Baker as the president of the company, which stated that he
had deposited that sum with the company for account of W. B.
Wasson or whom it might concern.

. Prior to that time Shirley had, according to Baker's testimony,
paid to him all sums of money which Baker may have advanced to
him.

It further appears that the money which was thus practically
received by the company, and to which, under the defendant's theory
of the case, no other persons than Shirley or W. B. Wasson could
have been entitled, was paid to Baker in bonds of the company.
These were facts to which the jury might look in considering
whether or not Shirley was acting for, or in connection with,
Baker in the transaction with W. B. Wasson, and if they found
that to be true, then the testimony of W. B. Wasson and of Blount,
if given by the jury greater credence than was given to that of
Shirley, would fix upon Baker knowledge that W. T. Wasson owned
the stock and held the certificate therefor at the time of the trans-
action between Shirley and W. B. Wasson.

The former testimony of Baker, to the effect that he furnished

the $1,500 which was deposited with White to Shirley, as the agent of Moses Taylor, may have influenced the jury to believe that he had no clear recollection of the facts.

The testimony of Shirley is in direct conflict with that of W. B. Wasson and Blount.

The testimony of Baker is seemingly in conflict with admitted or uncontroverted facts in the case.

While the direct and positive testimony of Shirley and Baker is entitled to weight, and, had the verdict been in accordance therewith, it could not have been set aside by this court, yet it is certainly true that there was evidence tending to show that Baker had notice that W. T. Wasson was the owner of the stock at the time he issued new certificate therefor to himself, and also tending to show that the transaction between Shirley and W. B. Wasson was for the benefit of Baker, or for the benefit of him and Shirley, for otherwise his subsequent reception, practically, of the money which had been deposited with White would have been an act of bad faith towards Shirley, who was in no way indebted to him, and who, under his version of the case, had borrowed that money from him and repaid it.

There is much conflicting evidence in the case; it was the peculiar province of the jury to weigh all of the testimony, and to decide the case in accordance with what they believed the preponderance of the testimony, and their finding under the evidence cannot be disturbed. We have been led to consider some of the leading facts supporting the verdict, and there are others not considered in this opinion, by the earnest holding of the appellant that the verdict was without evidence to support it.

The other assignments of error have been considered and are not well taken.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered March 20, 1883.]