WESTERN UNION TELEGRAPH CO. v. ERWIN.

(Court of Civil Appeals of Texas. El Paso. May 9, 1912.)

1. TELEGRAPHS AND TELEPHONES (§ 37*)—CONTRACTS—AUTHORITY OF AGENT.

A telegraph company's agent for receiving messages for transmission could bind the company by contract with the sender of a message, who had no notice of any limitation on the agent's authority, to report to the sender whether the message was delivered; this being a reasonable contract pertaining to the sending and delivery of messages.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

2. TELEGRAPHS AND TELEPHONES (§ 38*)—IMPLIED CONTRACTS—ACCEPTANCE OF TELEGRAM.

Independent of any special contract, the acceptance of a telegram for transmission obligates the telegraph company to transmit and promptly deliver it, or, in case prompt delivery is impossible, to notify the sender of the impending delay.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

3. EVIDENCE (§ 244*)—NONDELIVERY OF MESSAGE.

Where the agent of a telegraph company agreed to notify the sender of a message whether it was delivered, and later stated to the sender that the message had been delivered, the agreement and statement were made in the performance of his duties, and were admissible in evidence; the objection that the message was to be delivered by another agent not being material.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 916–936; Dec. Dig. 244.*]

4. TELEGRAPHS AND TELEPHONES (§ 74*)—NONDELIVERY OF MESSAGE—INSTRUCTION—MEASURE OF DAMAGES.

In an action for damages for exposure and sickness caused to plaintiff's wife and child from the nondelivery of a telegram, the court should charge the proper rules for the measure of damages.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 77; Dec. Dig. § 74.*]

5. PARENT AND CHILD (§ 7*)—INJURIES TO CHILD—INSTRUCTIONS—DAMAGES RECOVERABLE BY PARENT.

Where the petition against a telegraph company alleged that no one met the plaintiff's wife and baby at a railroad station, as the result of the defendant's failure to deliver a telegram, and that they suffered in health from exposure occasioned thereby, to plaintiff's damage in a certain sum, an instruction that the plaintiff should be allowed such damages as he sustained from the nondelivery of the telegram, if any, and that such alleged damages were fully set out in the petition, to which the jury should look for information, was erroneous, since it permitted a recovery for damages to the baby's health; the plaintiff being entitled to recover damages to the baby only for loss of services.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 72, 86–99; Dec. Dig. § 7.*]

Appeal from Taylor County Court; T. A. Bledsoe, Judge.

Action by H. A. Erwin against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed, and remanded for new trial.

J. M. Wagstaff, of Abilene, and Beall, Kemp & Parker, of El Paso, for appellant. Dallas Scarborough, and H. N. Hickman, both of Abilene, for appellee.

McKENZIE, J. This is a suit for damages, brought by H. A. Erwin against the Western Union Telegraph Company for the alleged failure to deliver a telegram. No issue is made as to the sufficiency of the petition. We will set out the substance of the testimony which was introduced in evidence:

Plaintiff testified that he delivered to Chester Brewer, the defendant's agent at Abilene, the following message for transmission and delivery: "1/11/10, Abilene, Texas. To Hattie Medlin. J. A. Medlin, at School, Dundee, Texas. Meet me on the midnight train. Ola." He told the agent that "Ola" was his wife, and that J. A. Medlin was the father, and Hattie Medlin was the sister, of his wife, and that Hattie Medlin was at school at Dundee on that day, and if the message was delivered to her by 4 o'clock it would in turn be delivered to J. A. Medlin, and that either J. A. Medlin or some member of his family would thereupon meet his wife and baby on the midnight train. Plaintiff also informed the agent that Dundee was a small place, and was without accommodations, and that his wife and baby were both sick and in a delicate condition, and that he would not send them to Dundee on the night train of that day, unless the message was delivered, so that some member of his wife's father's family could meet them at the train. Plaintiff also told the agent that he would call again later to find out if the message had been delivered. The agent was thereupon paid the charge for the sending of the message, and agreed to deliver the message to Hattie Medlin at Dundee on that day, and before the close of school. At about 5 o'clock on the same day, and about three hours after the delivery of the message to the defendant, plaintiff called at the office, and was told by Chester Brewer, the agent, to whom he had delivered the message, that the message had been delivered, and that upon the faith of said statement the plaintiff sent his wife and baby to Dundee on the next train.

The first assignment of error complains of the trial court's action in permitting plaintiff, over objection, to testify that Chester Brewer, to whom the message was delivered, agreed that the defendant would deliver same to Hattie Medlin at Dundee on the day it was filed. The second assignment of error complains of the trial court's action in permitting plaintiff, over objection, to testify that Chester Brewer told him that the message had been delivered on that day to Hattie Medlin at Dundee, the alleged conversation happening after said message had been received and filed with defendant for transmission.

Under the two assignments of error, appellant contends, in substance: (1) That Chester Brewer's duties were only to receive and file messages; that he had no authority to make the agreement to deliver the message in any particular time; and that it was not in the apparent scope of his authority to make such agreement. (2) That Chester Brewer, being agent only for the purpose of receiving and filing messages, and not being manager at the Abilene station, was without authority to make the statement to plaintiff that the message had been delivered that day to Hattie Medlin at Dundee; that the statement was not in the apparent scope of his authority. (3) That Chester Brewer, being an employé at the Abilene station, and not at the Dundee station, had no authority, and it was not in the apparent scope of his authority, to make an agreement or statement binding on appellant as to what would or would not be done, or as to what had been done, at the Dundee station.

Chester Brewer testified on the trial that he was receiving clerk; his duties being to receive messages for transmission and to collect charges therefor. He denied making the agreement or statement concerning the sending or the delivery of the message as testified to by plaintiff, and that he did not have the authority to make the agreement or statement attributed to him.

[1] The evidence does not disclose any fact tending to show that plaintiff knew, or had reason to know, of the limited authority delegated by defendant to Chester Brewer in the performance of the duties usual and customary of his position which he then occupied with the defendant. That defendant was holding Chester Brewer out to the public as its receiving clerk is undisputed. As

---

such clerk, he was receiving messages for transmission, collecting fees or charges for such service. Under the facts, plaintiff had a right to assume that Chester Brewer was qualified to act, and was vested with the authority, not only to receive the message and collect the charges for transmission, but to bind defendant company by reasonable contract which would pertain to the sending of messages, the delivery thereof, and to make report to plaintiff whether or not such message was delivered.

[2] Independent of any special contract, the acceptance of a message for transmission fixes upon a telegraph company the obligation and duty to transmit and make prompt delivery thereof. The public may rely upon this obligation and duty, and assume that an important message will be delivered at destination within a time reasonably necessary for that purpose. If prompt delivery be impossible, because the line is not working. or is crowded with other business, or because the sendee cannot be found, or for some other reason a prompt delivery cannot be made, it is the duty of a telegraph company to notify the sender of the impending delay.

[3] It is urged by appellant that, to render declarations of an agent admissible against the principal, the declarations must be made at the time the act was being performed; and, if made after the act was performed, then the declaration is not a part of the res gestæ, and not admissible in evidence. Statements, declarations, representations or admissions of an agent, made before he had undertaken the act he was employed to perform, or after it was completed, or while he was not engaged in its performance, or after his authority had expired, are not admissible against the principal. Such is the general rule; but, under the facts in this case, that rule is inapplicable. The defendant, by the agreement, obligated itself to notify plaintiff whether or not it had delivered the message; until it had performed the obligation, the contract was not completed. When Chester Brewer informed plaintiff that the message had been delivered, he was in the performance of the duties of his position, and his act was in the apparent scope of his authority; and plaintiff had a right to assume that the statement as made by him was true.

In Laudie v. Western Union Tel. Co., 126 N. C. 431, 35 S. E. 810, 78 Am. St. Rep. 668, an agent of the telegraph company negligently assured the sender that the message had been delivered; the sender acted upon the assurance, and suffered damage. The court held that the assurance of the defendant, false in fact, if not in intent, was actionable negligence, and plaintiff entitled to damages.

In Hendricks v. Western Union Tel. Co., 126 N. C. 304, 35 S. E. 543, 78 Am. St. Rep. 658, the court held that it was the duty of

the telegraph company, in all cases practicable, promptly to inform the sender of the message that it cannot be delivered. While a failure to do so may not be negligence per se, it is evidence of negligence; by notifying the sender, damage may be lessened, if not entirely avoided. To the same effect is the holding in the case of Cogdell v. Western Union Tel. Co., 135 N. C. 431, 47 S. E. 490.

In Western Union Tel. Co. v. Davis, 51 S. W. 258, the court said: "The defendant's liability depended upon whether or not it was guilty of negligence in failing to deliver the telegram to the plaintiff; and whether or not it was negligence to fail to notify the sender of the message of its inability to find the plaintiff was a question of fact to be decided by the jury."

We do not think the contract or statement made by the Abilene agent is objectionable, because part performance is required to be made at the Dundee station. The law requires appellant to make prompt delivery of the message after receipt at its Dundee station; and, if prompt delivery be impossible, because the sendee cannot be found, it should then report such fact to its Abilene station. Because of the kind of business that the appellant is engaged in, and because of the obligation which the law fixes upon it in the performance of its duty in the acceptance of a message for transmission, we are of the opinion that the acts of Chester Brewer were in the apparent scope of his authority, and were binding on the appellant. The question of negligence or no negligence on the part of the appellant in the performance of the contract, or in the performance of its duty towards the plaintiff, is a question for the jury. For the reasons stated, the assignments of error are overruled.

[4, 5] Appellant's third assignment of error complains of the following portion of the court's charge: "You will find for the plaintiff such damages, if any, as you find from the evidence plaintiff sustained by virtue of the nondelivery of said telegram, if any. Said damages, if any, must not exceed $975.40."

It is alleged in plaintiff's petition that when his wife arrived at the Dundee station she had to carry her sick baby, and by reason of said exposure her physical condition was made worse, and she was made very sick, and the baby's health was greatly impaired, to plaintiff's damage in the sum of $975. The plaintiff testified that he sent his wife and baby both on the train, and they were both sick at the time. Plaintiff's wife testified that when she arrived at Dundee she had to carry her baby, which was only five months old.

The court further charged the jury, "said alleged damages being fully set out in plaintiff's petition, which you will take with you for consideration and information."

It will be seen from the above that the charge as given failed to instruct the jury as to the proper measure upon which they should estimate the damages. The jury was further instructed thereby to consider the damages sustained on the part of the baby. This is error. The jury should be given in charge the proper rules· for the measure of damages; otherwise they are left without any definite guide, and injustice might follow. Again, the parent is permitted to recover for damages to the baby only for loss of services. The evidence fails entirely to show damages on that account. We therefore sustain the assignment of error.

The fourth assignment of error is overruled. We desire to say, however, that the better practice is for the court to avoid the use of language in the charge to the jury which might be construed as contradicting the portion of the charge which correctly instructs the jury upon the law of the case.

For the errors stated, the judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.